UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

JUAN RODRIGUEZ,

                                    Defendant.

12-CR-790 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

The Court has received an application on behalf of defendant Juan Rodriguez seeking his

compassionate release from Federal Correctional Institution Danbury ("FCI Danbury") pursuant

to 18 U.S.C. § 3582(c), in light of the risk that the COVID-19 pandemic presents for inmates.

*See* Dkts. 141 ("Def. Ltr."), 144 ("Second Def. Ltr."), 147 ("Def. Mem.").  For the reasons that

follow, the Court denies this application.

When Rodriguez was age 45, he organized the robbery and murder by asphyxiation of

Henry Castano, a drug courier whom Rodriguez knew from a separate narcotics conspiracy.  *See*

Dkts. 72 ("Sent. Tr.") at 12; 148 ("Gov't Mem.") at 1.  Rodriguez orchestrated the murder as part

of a successful plot to steal the approximately $1.3 million in drug proceeds that Castano was

transporting.  On October 21, 2013, the morning on which his trial was to begin, Rodriguez pled

guilty to participation in a robbery conspiracy, in violation of 18 U.S.C. § 1951, that entailed the

death of Castano, and participation in a conspiracy to distribute five kilograms and more of

cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846.  *See* Dkt. 67 at 1; Sent. Tr. at 2, 42.  On

February 14, 2014, the Court sentenced Rodriguez to 25 years' imprisonment followed by a

lifetime term of supervised release.  Sent. Tr. at 43.  Rodriguez has been incarcerated since his

arrest on October 18, 2012.  Def. Mem. at 1.  According to the Government, Rodriguez has served less than eight years of his 25-year sentence, and his projected date of release, with good behavior, is February 5, 2034.  Gov't Mem. at 4.

On May 14, 2020, Rodriguez filed a request for compassionate release with the warden of FCI Danbury, citing the risk posed by COVID-19 to an inmate with his medical profile.  *See* Second Def. Ltr. at 5.  That same day, the warden denied Rodriguez's request.  Gov't Mem. at 7. On May 19, 2020, the Court received a *pro se* letter from Rodriguez, seeking early release in light of the COVID-19 pandemic.  *See* Def. Ltr.  The Court later received an additional letter from Rodriguez seeking compassionate release.  *See* Second Def. Ltr.  The Court directed Rodriguez's trial counsel to file a letter in support of that application, and directed the Government thereafter to submit a letter setting forth its position.  Dkt. 142 at 1.  On June 22, 2020, Rodriguez's counsel filed a letter in support of his motion.  Def. Mem.  On June 23, 2020, the Government filed their opposition.  Gov't Mem.

Rodriguez asks the Court to reduce his sentence to time served.  *See* Def. Mem. at 2, 8. Rodriguez, who is age 67, argues he should be released because of the risk COVID-19 poses to him.  *See id.* at 1.  Specifically, he suffers from hypertension, high cholesterol, depression, and potentially undiagnosed chronic obstructive pulmonary disease.  *Id.*  The Government opposes Rodriguez's early release.  *See* Gov't Mem. at 1.  It argues that Rodriguez's motion should be denied, because, *inter alia*, he is a danger to the community and because the § 3553(a) factors disfavor his release relatively early in his sentence.  *See id.*[1]

---

[1] The Government does not contend that Rodriguez has failed to exhaust his administrative remedies.

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).  The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable."  *Id.* § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence.  *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (quoting 28 U.S.C. § 994(t)).  Relevant here, the Commission's policy statement and its corresponding commentary on § 3582(a)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[2]  U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A).  The defendant must also not be a danger to the community and the reduction must be consistent with the Commission's policy statement.  *Id.* § 1B1.13(2)–(3).

The first of these factors, if viewed in isolation, might favor the early release of an inmate of Rodriguez's age and physical condition.  The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation.  It presents a clear and present danger to free

---

[2] U.S.S.G. § 1B1.13(1)(A) references only "a motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which allows defendants independently to seek compassionate release relief from federal courts.  *See Ebbers*, 432 F. Supp. 3d at 422–23, 427.

society for reasons that need no elaboration.  Further, the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread.[3] And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself.  For these reasons, in the past months, numerous courts, including this one, have ordered the temporary release of inmates held in pretrial or presentencing custody[4] and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences.[5]

---

[3] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (Mar. 30, 2020, updated May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, --- F. Supp. 3d ---, No. 18 Cr. 713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) (citing *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

[4] *See, e.g.*, *United States v. Chandler*, --- F. Supp. 3d ---, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, pursuant to 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, --- F. Supp. 3d ---, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *2–3 (S.D.N.Y. Mar. 30, 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had previously been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, pursuant to § 3145(c), to defendant who had pleaded to a narcotics offense); *cf. United States v. Stephens*, --- F. Supp. 3d ---, No. 15 Cr. 95 (AJN), 2020 WL 1295155, at *3 (S.D.N.Y. Mar. 19, 2020) (granting defendant's request for reconsideration of bail conditions and releasing him to home confinement, while noting that, in the alternative, § 3142(i) would necessitate his temporary release).

[5] *See, e.g.*, *United States v. Davies*, No. 18 Cr. 390, Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played low-level role in drug trafficking conspiracy); *United States v. Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (ordering compassionate release of 65-year-old defendant with several high-risk medical conditions who was not a danger to the community); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (S.D.N.Y. April 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence); *see also infra* nn.6–7.

Here, Rodriguez argues that he is especially vulnerable to the most serious effects of COVID-19 because of his age and medical conditions.  These facts are undisputed.  And the Government does not dispute that Rodriguez is at a heightened risk of complications from COVID-19 compared to the average inmate at FCI Danbury.  *See* Gov't Mem. at 5.  However, even though Rodriguez's medical conditions put him at higher risk than the average inmate, the Government argues, a reduction in his sentence is not supported under the § 3553(a) factors.

The Court emphatically agrees that Rodriguez's release is unjustified.  Indeed, his application for compassionate release is likely the least tenable of the many this Court has thus far received.  That is so for two independent reasons.

First, the Court cannot find that Rodriguez "is not a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2), as is required for compassionate release.  Quite the contrary:  Rodriguez is a vicious murderer and a career criminal.  In order to steal the $1.3 million in drug proceeds that Castano was carrying, Rodriguez plotted to intercept Castano and if necessary, asphyxiate him to eliminate him as a witness to the robbery.  That in fact happened.  After relieving Castano of the money he carried, the conspirators—acting at Rodriguez's direction, as Rodriguez elected to be off-site—bound Castano's face in duct tape and then sat on him in the back of a car while he struggled for breath until he expired.  They then disposed of his body in a nearby cemetery.  In light of this shocking conduct, Rodriguez's claim to not pose a risk to public safety is risible.  As the Court noted at sentencing, "it is hard to imagine a more profoundly immoral wrongful act."  Sent. Tr. at 30–31 (describing plot as "calculat[ed] and cold-blooded and selfish").  There is no reason to believe that Rodriguez, if released, would not revert to crime and would no longer pose a danger to public safety.

Independently, given the gravity of Rodriguez's offense, Rodriguez's release after serving less than eight years of his 25-year sentence would flout the assembled § 3553(a) factors In particular, "the nature and circumstances of the offense," "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant," *see* 18 U.S.C. § 3553(a), demand a much higher sentence.  A sentence for Rodriguez's horrific crimes along the lines of that imposed is necessary to punish Rodriguez, promote respect for the law, and deter others.  As the Court noted at sentencing, "there is no other way to describe [Rodriguez's] decision [to murder Castano] as anything other than pure evil" and "the need for just punishment . . .  demand[s] a very high sentence."  *See* Sent. Tr. at 30, 33.  Indeed, the 300-month (25-year) sentence the Court imposed was slightly below the applicable guidelines range, which anticipated a sentence of between 27 and 34 years.  *See id.* at 29.  An order freeing Rodriguez—thereby reducing his sentence by well more than half—would badly disserve these important § 3553(a) factors.

This outcome is easily squared with the Court's resolution of other compassionate release applications.  In most cases, where the Court has ordered the release of a heightened-risk inmate, the defendant seeking release had served most of his or her term of incarceration, there were sound reasons to doubt that the defendant posed a continuing risk to public safety, and the Court found that a fresh assessment of the § 3553(a) factors justified early release.[6]  The defendant,

---

[6] *See, e.g.*, *United States v. Knox*, No. 15 Cr. 445 (PAE), Dkt. 1088 (S.D.N.Y. April 10, 2020) (defendant had served all but seven months of an 88-month sentence and was eligible for home confinement in two weeks' time); *Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 (S.D.N.Y. April 6, 2020) (defendant had served all but 34 days of a four-month sentence and had an immune-inflammatory disease); *United States v. Hernandez*, --- F. Supp. 3d ---, No. 18 Cr. 834 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. April 2, 2020) (defendant had served 17 months of a 24-month sentence).

Louis Brown, to whom Rodriguez points as an ostensible comparator could not be more far afield.[7]  In no prior case has the Court ordered the early release of a murderer.  And the Court, in general, has tended not to order the early release of defendants who had served less than half of their sentences, viewing such releases as generally incompatible with the §3553(a) factors.[8]

Accordingly, finding that Rodriguez continues to pose a danger to the community and that the § 3553(a) factors, in combination, clearly do not support a reduction of sentence, the Court denies Rodriguez's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

The Clerk of Court is respectfully directed to terminate the motion pending at dockets 141, 144, and 147.

---

[7] The Court two weeks ago granted Brown's compassionate release on account of his age and frail condition.  *See Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (cited at Def. Mem. at 2).  Although Rodriguez and Brown are of similar age and each suffer from hypertension, Brown had a host of other grave conditions that made him especially susceptible to complications from COVID-19.  More important, Brown's offense conduct did not involve violence, let alone premeditated murder.  He was a street-level drug seller whose conduct was driven by the need to feed a longstanding narcotics addiction.  As the decision in Brown's case reflects, Brown's release did not endanger public safety, and the § 3553(a) factors were compatible with his compassionate release.  Not so here.

[8] *See, e.g.*, *United States v. Nissen*, No. 17 Cr. 477 (PAE), 2020 WL 2614825, at *3 (S.D.N.Y. May 22, 2020) (denying compassionate release motion and finding that a reduction of a 27-month sentence to seven months would be "highly inconsistent" with the 3553(a) factors); *United States v. Butler*, No. 18 Cr. 834 (PAE), 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release motion for recently sentenced defendant with asthma and a cardiac condition who had served 15 months of 60-month sentence); *United States v. Credidio*, No. 19 Cr. 111 (PAE), Dkt. 62 (S.D.N.Y. Mar. 30, 2020) (for similar reasons, denying compassionate release motion for a defendant at heightened risk of COVID-19 who had served just two months of a 33-month sentence).

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: July 1, 2020
       New York, New York