UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>JUAN RODRIGUEZ,<br><br>　　　　　　　　　　　　Defendant. | 12 Cr. 790 (PAE)<br><br>OPINION AND ORDER |

PAUL A. ENGELMAYER, District Judge:

This decision resolves a second motion by defendant Juan Rodriguez for compassionate release from the Federal Correctional Institution in Danbury ("FCI Danbury"), pursuant to 18 U.S.C. § 3582(c). *See* Dkt. 149 (denying first motion). For the reasons that follow, the Court again denies Rodriguez's motion.

I.  **Background**[1]

 A. **Rodriguez's Crimes, Prosecution, and Sentencing**

When Rodriguez was age 45, he organized the robbery and murder by asphyxiation of Henry Castano, a drug courier whom Rodriguez knew from a separate narcotics conspiracy. Dkt. 72 at 42. Rodriguez orchestrated the murder as part of a successful plot to steal the approximately $1.3 million in drug proceeds that Castano was transporting. Dkt. 179 ("Gov't Mem.") at 1. The murder was unusually brutal and sadistic. It involved members of Rodriguez's robbery crew, dressed to resemble undercover police officers, stopping Castano's

---

[1] The Court draws the background to this decision largely from its decisions denying Rodriguez's earlier application for compassionate release, Dkt. 149, and denying Rodriguez's motion for reconsideration of that decision, Dkt. 159, and from the transcript of Rodriguez's sentencing, Dkt. 72 ("Sent. Tr."). Further record citations may be found in those materials.

car, placing him in the backseat of their car, placing duct tape on Castano's face, suffocating him to death over a period of 10 to 15 minutes, and dumping Castano's dead body in a cemetery. *Id.*

On October 21, 2013, the morning on which his trial was to begin, Rodriguez pled guilty to participation in a robbery conspiracy, in violation of 18 U.S.C. § 1951, which resulted in the murder of Castano, and participation in a conspiracy to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A) and § 846. Gov't Mem. at 2.

On February 14, 2014, the Court sentenced Rodriguez to 25 years' imprisonment—below the advisory guidelines range of between 324 and 405 months' imprisonment—to be followed by a lifetime term of supervised release. Sent. Tr. at 34, 43. The Court rejected Rodriguez's bid for a 15-year sentence. *Id.* at 18. In its sentencing remarks, the Court explained at length why a 25-year sentence was necessary to achieve the sentencing goal of just punishment, and why such a sentence would also advance the interests in specific and general deterrence and in protection of the public.

On January 13, 2015, the Second Circuit dismissed Rodriguez's appeal of his sentence and summarily affirmed his conviction. Dkt. 87.

Rodriguez has been incarcerated since his arrest on October 18, 2012. According to the Government, Rodriguez has served 11 years and two months of his 25-year sentence, and his projected date of release, assuming good time credit, is August 23, 2033. Gov't Mem. at 4.

### B. Rodriguez's Initial Compassionate Release Motion

On May 14, 2020, Rodriguez filed a request for compassionate release with the warden of FCI Danbury, citing the risk posed by COVID-19 to an inmate with his age (67) and medical profile (he suffers from hypertension, high cholesterol, depression, and potentially undiagnosed chronic obstructive pulmonary disease). Dkt. 144 at 5. That same day, the warden denied

Rodriguez's request. *Id.* at 1. On May 19, 2020, the Court received a *pro se* letter from Rodriguez, seeking early release in light of the COVID-19 pandemic. Dkt. 141. The Court later received an additional letter from Rodriguez seeking compassionate release. Dkt. 144. The Court directed Rodriguez's trial counsel to file a letter in support of that application, and the Government then to submit a letter setting forth its position. Dkt. 142. On June 22, 2020, Rodriguez's counsel filed a letter in support of his motion, arguing that compassionate release was warranted because of the risk COVID-19 posed and because it had been more than 22 years since Rodriguez committed his crimes. Dkt. 147. On June 23, 2020, the Government filed its opposition, arguing that Rodriguez's motion should be denied, because, *inter alia*, he is a danger to the community and because the 18 U.S.C. § 3553(a) factors disfavor his release relatively early in his sentence. Dkt. 148.

On July 1, 2020, the Court issued an order denying Rodriguez's application. The Court found Rodriguez's vulnerability to COVID-19 in prison decisively outweighed by the § 3553(a) factors supporting the sentence imposed. Rodriguez's confinement until the scheduled release date, the Court found, was necessary to punish Rodriguez, promote respect for the law, deter others, and protect the community. *See generally* Dkt. 149. Given the gravity and depravity of Rodriguez's offenses, the Court described Rodriguez's application for compassionate release as "likely the least tenable of the many this Court has thus far received." *Id.* at 5.

### C. Rodriguez's Motion for Reconsideration

On January 27, 2022, Rodriguez moved, *pro se*, for reconsideration of the denial of release. Dkt. 158. On February 25, 2022, the Court denied that motion. Dkt. 159. "Just punishment," the Court explained, "continues to require a 25-year prison sentence, and Rodriguez remains 'a danger to the safety of any other person or to the community.'" *Id.* at 2

3

(quoting U.S.S.G. § 1B1.13(2)). The Court added: "Rodriguez orchestrated the grotesque murder of a drug courier, Castano, in order to steal over a million dollars of drug money from him" and "plotted to intercept Castano and[,] if necessary, asphyxiate him to eliminate him as a witness to the robbery." *Id.* at 2–3 (citations omitted). And although Rodriguez's motion for reconsideration claimed in a sentence that he was remorseful for his crimes, "that expression does not make Rodriguez's vicious conduct any less worthy of lengthy incarceration or Rodriguez any less of a danger to society if released." *Id.* at 3. The Court also reiterated its earlier finding that releasing Rodriguez prior to the expiration of his sentence would offend the § 3553(a) factors, viewed in combination, and that the 25-year sentence imposed "was and is eminently justified." *Id.*

### D. Rodriguez's Current Motion for Compassionate Release

On October 13, 2023, Rodriguez filed a new *pro se* motion for compassionate release from FCI Danbury. Dkt. 176. Rodriguez argues that although his crime had been serious, it happened "in the heat of the moment," that his co-conspirators shared responsibility for it, *id.* at 2, and that his sentence was unjustifiedly longer than theirs, *id.* at 3-4. Rodriguez also sought release on the grounds that he is now age 70 and that age "is taking a toll on the human body," *id.* at 4–5, that he has shown post-offense rehabilitation, *id.* at 5, and that "a re-evaluation of [the] section 3553(a) factors weighs in favor of a sentence reduction," *id.* at 6-7.

On December 11, 2023, the Government submitted an opposition. Dkt. 179.

## II. Discussion

### A.  Standards Governing Compassionate Release Motions

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

4

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citations omitted)); *see also, e.g., United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf. *United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Although Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence, *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)), before November 1, 2023, the Sentencing Commission's only guidance on this point had been promulgated prior to the enactment of the First Step Act. This guidance thus applied only to a "motion of the Director of the Bureau of Prisons," *see* U.S.S.G. § 1B1.13 (historical note), and not "to compassionate release motions brought by defendants," *Brooker*, 976 F.3d at 236; accordingly, the Second Circuit held in 2020, this guidance "[could not] constrain district courts' discretion to consider whether any reasons [were] extraordinary and compelling" in such cases, *id. See also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated

5

version of Guideline § 1B1.13, limits the district court's discretion."). Thus, through November 1, 2023, when assessing a motion brought by an imprisoned defendant and not the BOP, a district court was not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and could "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.

Effective November 1, 2023, however, the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated.

The Commission's updated guidance identifies six circumstances that, singly or in combination, may so qualify. U.S.S.G. § 1B1.13(b). These are:

- *Medical circumstances of the defendant.* U.S.S.G. § 1B1.13(b)(1). In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, *id.* § 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, *id.* § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." *Id.* § 1B1.13(b)(1)(D). This factor was informed by compassionate release decisions coming out of the COVID-19 pandemic. *See* U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 206 (November 1, 2023).

- *Age of the defendant.* Coupled with a deterioration in physical or mental health corresponding with the aging process as well as the portion of the original sentence served at the time of a compassionate release motion, this may support sentence reduction. U.S.S.G. § 1B1.13(b)(2).

6

- *Family circumstances of the defendant.* Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction. *See id.* § 1B1.13(b)(3).

- *Victim of abuse in custody.* Where the defendant while in custody on the sentence in question was a victim of sexual abuse, or physical abuse resulting in serious bodily injury "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant," and the misconduct was "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding," this may support a sentence reduction. *Id.* § 1B1.13(b)(4).

- *Catchall provision.* Where a defendant presents "any other circumstance or [a] combination of circumstances" that themselves or with the above circumstances are similar in gravity to those above, such may support sentence reduction. *Id.* § 1B1.13(b)(5). The Commission "rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity[.]" U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 207 ("[T]he Commission continues to believe . . . that judges are in a unique position to determine whether the circumstances warrant a reduction. Guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts[.]" *Id.* (cleaned up).

- *Unusually long sentence plus changes in law.* Where a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. U.S.S.G. § 1B1.13(b)(6).

Finally, even if extraordinary and compelling reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

**B. Discussion**

Substantially for the same reasons as the Court denied Rodriguez's earlier compassionate release motion and his ensuing motion for reconsideration, the Court denies Rodriguez's present

7

motion for compassionate release. Far from presenting a close question, the motion is so devoid of merit as to be frivolous.[2]

First, Rodriguez does not today identify an "extraordinary and compelling" circumstance justifying early release. In his 2020 motion, Rodriguez relied on the risk that the raging COVID-19 pandemic presented to him given his existing medical conditions. Dkt. 141. The Government assumed *arguendo* that those conditions would satisfy the threshold criteria for release under § 3582(c). Dkt. 148 at 5. And the Court, writing when vaccines had yet to issue, did not hold otherwise. On the contrary, the Court acknowledged Rodriguez's heightened risk of complications from COVID-19 relative to other inmates, Dkt. 149 at 5, and based its denial of the motion on other factors: the danger to the community that Rodriguez posed, and the balance of the § 3553(a) factors. *Id.* at 5–7. Today, however, COVID-19 has receded; vaccines have been available to federal inmates for more than two and a half years; the spike of deaths and adverse outcomes among such inmates from COVID-19 in 2020 and 2021 is a thing of the past; and Rodriguez has not cited a factual basis on which to contend that his life is endangered by the pandemic or other circumstances at FCI Danbury.

Rodriguez's other arguments why he satisfies the statutory threshold are easily put aside. He argues that the Court, at sentencing, misunderstood his prior crimes. That is incorrect, for the reasons the Court gave in rejecting Rodriguez's motion for reconsideration, which made the same argument. *See* Dkt. 159 at 3. He argues that his 25-year sentence was inexplicably longer than the 23-year sentence imposed on co-defendant Raul Santana. But at Santana's sentencing, in July 2016, more than two years after Rodriguez's, the Court explained why a slightly shorter

---

[2] The Government concedes that Rodriguez has exhausted his administrative remedies. Gov't Mem. at 6.

8

sentence was warranted for Santana, and, contrariwise, why a longer (30-year) sentence was warranted for co-defendant Alexander Suero. *See* Dkt. 136 at 48–50. Rodriguez also cites his age, which under the Sentencing Commission's new guidance can qualify as an extraordinary and compelling circumstance when coupled with a deterioration in the defendant's health. But Rodriguez does not articulate (let alone document) any deterioration in his health that is out of the ordinary.[3]

Second, even if Rodriguez had shown extraordinary and compelling circumstances, the § 3553(a) factors cannot be squared with his early release, for the reasons the Court gave in denying both his initial motion under § 3582(c) and his motion for reconsideration, and, before that, in carefully explaining the balance of these factors at sentencing. And Rodriguez, in urging a "renewed examination" of those factors, does not explain why these favor a lower sentence. In brief, the Court remains convinced that just punishment is incompatible with a prison sentence anywhere below 25 years, given the sheer evil of the plot that Rodriguez premeditated and led to brutally extinguish Castano's life to enable Rodriguez and his plotters to abscond with the $1.3 million in drug money Castano carried. In addition, the interest in public protection remains weighty given the risk Rodriguez would present were he released and hence at liberty to scheme or engage anew in crime. The corresponding interest in specific deterrence of Rodriguez, and the general deterrence of others who would contemplate such dastardly conduct, is also advanced by a lengthy sentence along the lines of that imposed. To the extent Rodriguez cites sympathetic or otherwise mitigating aspects of his life and journey, the Court considered these at sentencing, and Rodriguez does not identify any new mitigating facts, let alone ones consequential enough to

---

[3] And at sentencing, the Court gave careful attention to Rodriguez's relatively advanced age, and the possibility that he would prove unable to outlive his term of imprisonment, in determining the just and reasonable sentence. *See* Sent. Tr. at 36–37, 39–41.

warrant reassessment of a sentence the Court has repeatedly held necessary. Rodriguez has not justified any sentence reduction or come remotely close.

## CONCLUSION

For the reasons above the Court again denies Rodriguez's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Clerk of Court is respectfully directed to terminate the motion pending at docket 176.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: January 23, 2024
　　　　New York, New York