UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | S3 12 Cr. 790 (PAE) |
| -v- | OPINION & ORDER |
| JUAN RODRIGUEZ, | |
| Defendant. | |

PAUL A. ENGELMAYER, District Judge:

This decision resolves a *pro se* motion by defendant Juan Rodriguez for compassionate

release pursuant to 18 U.S.C. § 3582(c)(1). This is Rodriguez's fifth application for sentencing

reduction since his sentencing on February 14, 2014. For the reasons that follow, the Court

denies the motion.

I.      Background[1]

   A.  Rodriguez's Crimes, Prosecution, and Sentencing

When Rodriguez was age 45, he organized the robbery and murder by asphyxiation of

Henry Castano, a drug courier whom Rodriguez met through his work laundering money for a

---

[1] The background to Rodriguez's motion is set out in detail in the following materials, on which this summary draws: the Probation Department's February 28, 2014 presentence report ("PSR"), the Government's February 9, 2014 sentencing letter, Dkt. 66 ("G. Sent'g Ltr."), the transcript of Rodriguez's sentencing, Dkt. 72 ("Sent'g Tr."), the Court's July 1, 2020 decision denying Rodriguez's initial compassionate release motion, Dkt. 149 ("CR Dec'n"), the Court's February 25, 2022 decision denying Rodriguez's motion for reconsideration of the CR Decision, Dkt. 159 ("CR Reconsideration"), the Court's January 23, 2024 decision denying Rodriguez's second compassionate release motion, Dkt. 180 ("Second CR Dec'n"), the Court's February 5, 2024 motion denying Rodriguez's application for a reduction of sentence pursuant to Amendment 821 of the Sentencing Guidelines, Dkt. 183, Rodriguez's present compassionate release motion, filed September 8, 2025, Dkt. 189 ("CR Mot."), and the Government's September 26, 2025 memorandum in opposition to that motion, Dkt. 190 ("G. Mem."). The Court also received a further reply from Rodriguez in support of his latest motion. Dkt. 192.

Mexican drug cartel.  Rodriguez orchestrated the murder as part of a successful plot to steal the approximately $1.3 million in drug proceeds that Castano was transporting.  The murder was unusually brutal and sadistic.  It involved members of Rodriguez's robbery crew, outfitted with fake police badges, stopping Castano's car, placing him in the backseat of their car, and driving to a covered parking lot.  There, they forced duct tape over Castano's mouth and face, suffocating him to death over a period of 10 to 15 minutes before dumping Castano's dead body face up in a cemetery.

On October 21, 2013, the morning on which his trial was to begin, Rodriguez pled guilty to participation in a robbery conspiracy, in violation of 18 U.S.C. § 1951, which resulted in the murder of Castano, and participation in a conspiracy to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), (b)(1)(A), 846.

On February 14, 2014, the Court sentenced Rodriguez to 25 years' imprisonment— below the advisory guidelines range of 324 to 405 months' imprisonment—followed by a lifetime term of supervised release.  The Court rejected Rodriguez's bid for a 15-year sentence. In its sentencing remarks, the Court explained at length why, given the "gruesome" and "pure evil" nature of the murder that Rodriguez planned to ensure the robbery of Castano would be a success, a 25-year sentence was minimally necessary to achieve the goal of just punishment. The Court carefully reviewed the other 18 U.S.C. § 3553(a) sentencing factors, including the mitigating factors cited by Rodriguez, and found any lower sentence incompatible with the sentencing factors, taken as a whole.  On January 13, 2015, Rodriguez's conviction was summarily affirmed by the Second Circuit after his counsel moved to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967).

Rodriguez has been incarcerated since his arrest on October 18, 2012.  According to the Bureau of Prisons (BOP), Rodriguez has served a little more than 13 years of his 25-year sentence, and his projected date of release, assuming good time credit, is March 25, 2033.

### B.    Rodriguez's Initial Compassionate Release Motion

On May 14, 2020, Rodriguez filed a request for compassionate release with the warden of the BOP's Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"), citing the risk posed by COVID-19 to him due to his age (then 67) and medical profile (suffering from hypertension, high cholesterol, depression, and potentially undiagnosed chronic obstructive pulmonary disease).  That same day, the warden denied Rodriguez's request.  On May 19, 2020, the Court received a *pro se* letter from Rodriguez, seeking early release in light of the COVID-19 pandemic and his health condition.  On June 4, 2020, Rodriguez filed a second letter.  The Court directed Rodriguez's trial counsel to file a letter in support of that application, and the Government then to submit a letter setting forth its position.  On June 22, 2020, Rodriguez's counsel filed a letter in support of his motion, arguing that compassionate release was warranted because Rodriguez was at particular risk from COVID-19 and it had been more than 22 years since Rodriguez committed his crimes.  On June 23, 2020, the Government filed its opposition, arguing that Rodriguez's motion should be denied, because, *inter alia*, he continued to pose a danger to the community and the § 3553(a) factors disfavored his release with only 30% of his sentence served.

On July 1, 2020, the Court denied Rodriguez's motion, "emphatically" finding Rodriguez's early release unjustified.  *See* CR Dec'n.  The Court found Rodriguez's vulnerability to COVID-19 in prison decisively outweighed by the § 3553(a) factors supporting the sentence imposed.  Rodriguez's confinement until the scheduled release date, the Court

found, was necessary to punish him, promote respect for the law, deter others, and protect the community.  Given the gravity and depravity of Rodriguez's offenses, the Court described Rodriguez's application for compassionate release as "likely the least tenable of the many this Court has thus far received."

### C.        Rodriguez's Motion for Reconsideration

On January 27, 2022, Rodriguez moved, *pro se*, for reconsideration of the denial of release.

On February 25, 2022, the Court denied that motion.  Dkt. 159 ("CR Reconsideration"). "Just punishment," the Court stated, "continues to require a 25-year prison sentence, and Rodriguez remains 'a danger to the safety of any other person or to the community.'"  The Court added: "Rodriguez orchestrated the grotesque murder of a drug courier, Castano, in order to steal over a million dollars of drug money from him" and "plotted to intercept Castano and[,] if necessary, asphyxiate him to eliminate him as a witness to the robbery."  And although Rodriguez's motion for reconsideration had claimed, in a single sentence, that he was remorseful for his conduct, "that expression does not make Rodriguez's vicious conduct any less worthy of lengthy incarceration or Rodriguez any less of a danger to society if released."  The Court also reiterated its finding that releasing Rodriguez prior to the expiration of his sentence would offend the § 3553(a) factors, viewed in combination, and that the 25-year sentence imposed "was and is eminently justified."

### D.    Rodriguez's Second Motion for Compassionate Release

On September 15, 2023, Rodriguez filed another *pro se* motion for compassionate release with the warden of FCI Danbury. After that request was denied, on October 13, 2023, the Court received a *pro se* letter from Rodriguez, seeking early release. He argued that although his crime had been serious, it happened "in the heat of the moment," that his co-conspirators shared responsibility for it, and that his sentence was unjustifiably longer than theirs. Rodriguez also sought release on the grounds that he was by then age 70 and that age was "taking a toll on the human body," that he has shown post-offense rehabilitation by attempting to earn his G.E.D, and that "a re-evaluation of [the] section 3553(a) factors weigh[ed] in favor of a sentence reduction." On December 11, 2023, the Government opposed.

On January 23, 2024, the Court denied Rodriguez's motion, substantially for the same reasons it had denied his early compassionate release motion and motion for reconsideration. *See* Second CR Dec'n.

Rodriguez's motion, the Court stated, "is so devoid of merit as to be frivolous." Rodriguez had not identified an extraordinary and compelling circumstance justifying early release. Whereas his initial motion had identified COVID-19 as such a circumstance, the pandemic had receded, vaccines had been available to inmates for more than two-and-a-half years, and the spike of deaths among inmates from COVID-19 that had occurred in 2020 and 2021 was "a thing of the past." Also meritless were Rodriguez's arguments that his 25-year sentence was unjustifiable based on his co-defendants' prison sentences (of 23 and 30 years, respectively) and on his claim of worsened health. The Court reiterated that the § 3553(a) factors independently precluded a reduction in sentence, including because the "sheer evil" of Rodriguez's plot required the sentence imposed, as did the interests in specific deterrence,

deterring others, and protection of the public.  Finally, the Court noted, it had already taken into account at sentencing the aspects of Rodriguez's life that he claimed were mitigating.

### E.    Rodriguez's Motion for Relief Under Amendment 821

Also on January 23, 2024, Rodriguez moved for a reduction of sentence pursuant to Amendment 821, which took effect November 1, 2023, and applied retroactively to authorize reductions of sentences based on two Sentencing Guidelines amendments relating to criminal history.  On February 5, 2024, the Court denied Rodriguez's motion, finding, in accord with the Probation Department, that he did not meet Amendment 821's eligibility criteria.

### F.    Rodriguez's Third Motion for Compassionate Release

On September 3, 2025, Rodriguez filed the pending compassionate release motion.  As grounds for early release, he cites his age (71) and health conditions (high blood pressure, high cholesterol, swelling of the legs, and "prostate and eye complications").  He also relies on his assertions that he has been rehabilitated, that there are unjustified disparities between his sentence and those of similarly situated offenders, and that his sentence was excessive. Rodriguez further argued that the seriousness of his crime should not preclude the possibility of compassionate release.  On September 26, 2025, the Government filed its opposition to Rodriguez's motion, noting that between Rodriguez's compassionate release motions, and motions for reconsideration, this was his fifth request for a sentencing reduction in the past five years.

## II.    Legal Standard

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

defendant's facility," the Court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release.  *See United States v. Fernandez*, 104 F.4th 420, 427 (2d Cir. 2024); *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 2017).

Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release motions, and required the BOP to seek such release on their behalf.  *See United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020).  However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).  Although Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify such reduction, before November 1, 2023, the Sentencing Commission's only guidance on this point had been promulgated prior to the enactment of the First Step Act.  *See Brooker*, 976 F.3d at 231–34 (quoting 28 U.S.C. § 994(t)).  The Second Circuit therefore held that this guidance applied only to "those motions that the BOP has made" and not "to compassionate release motions brought by defendants." *Id.* at 235–36.  Thus, through November 1, 2023, when assessing a motion brought by an imprisoned defendant and not the BOP, a district court was not constrained by section 1B1.13's enumeration of extraordinary and compelling reasons and could "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.

Effective November 1, 2023, however, the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions.  *See generally* U.S. Sent'g Comm'n,

Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The

amended guidance from the Commission as to what constitute extraordinary and compelling

reasons now controls the analysis of a compassionate release petition, however initiated.

The Commission's updated guidance identifies six circumstances that, singly or in

combination, may so qualify. U.S.S.G. § 1B1.13(b). These are:

- *Medical circumstances of the defendant.* In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, *id*. § 1B1.13(b)(1)(A)–(B), the amended guidelines indicate the following may support a sentence reduction: whether the defendant is "experiencing deteriorating physical or mental health because of the aging process," *id*. § 1B1.13(b)(1)(B)(iii), and is suffering from a medical condition that "requires long-term or specialized medical care that is not being provided" in prison and "without which the defendant is at risk of serious health deterioration or death," *id*. § 1B1.13(b)(1)(C). Medical circumstances may also be extraordinary and compelling where the defendant is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency," where "due to personal health risk factors and custodial status," the defendant is at greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." *Id*. § 1B1.13(b)(1)(D).

- *Age of the defendant.* The defendant's age may support a sentence reduction where he "is at least 65 years old," is "experiencing a serious deterioration" in health due to aging, and has served at least 10 years or 75 percent of his sentence. *Id.* § 1B1.13(b)(2).

- *Family circumstances of the defendant.* Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction. *Id*. § 1B1.13(b)(3).

- *Victim of abuse in custody.* Where the defendant experiences sexual or physical abuse resulting in serious bodily injury and "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant," while in custody on the sentence in question, this may also support a sentence reduction. *Id*. § 1B1.13(b)(4).

- *Catchall provision.* Where a defendant presents "any other circumstance or [a] combination of circumstances" that themselves, or when considered with the above circumstances, are similar in gravity to those above, such may support a sentence reduction. *Id*. § 1B1.13(b)(5).

- *Unusually long sentence plus change in law.*  Where a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason.  *Id.* § 1B1.13(b)(6).

As to the defendant's rehabilitation, section 1B1.13 states that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason," but rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  *Id.* § 1B1.13(d).

Finally, even if extraordinary and compelling reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).

## III.    Discussion

Rodriguez cites multiple circumstances that he claims are extraordinary and compelling. He further argues that, in light of his asserted "exemplary post-sentencing conduct," "low" "score risk of recidivism" and rehabilitation, his early release is consistent with the § 3553(a) factors.  The Government counters that Rodriguez is wrong on both points.[2]

The Government is correct.  Rodriguez's third motion for compassionate release, like his first two, is completely meritless.

### A.    Extraordinary and Compelling Circumstances

#### 1.    Age and Deteriorating Health

Rodriguez cites his age and his claim to suffer from various health conditions, including high blood pressure, high cholesterol, swelling of the legs, and prostate and eye complications. He further suggests that there is a "system issue" within the BOP in handling "the medical needs

---

[2] It is undisputed that Rodriguez has exhausted his administrative remedies.  G. Mem. at 6.

9

of aging inmates," such as himself.  These reasons do not support release.  The Court considered and rejected much the same arguments last year, while reviewing Rodriguez's second compassionate release motion.

Rodriguez's argument about his age adds nothing new.  At sentencing, Rodriguez emphasized his age (then 60) as a basis for leniency, and the Court took that argument into account in imposing sentence.  *See* Sent'g Tr. at 39–42.  The Court noted that as Rodriguez reached old age, the need for his incarceration as a means to protect the public would diminish, and noted that a 25-year sentence would give Rodriguez the hope, although not the certainty, of not dying in prison.  *Id*. at 42.  The Court expressly contemplated that it was "entirely possible that [Rodriguez] will not outlive his sentence."  *Id*.  There is thus nothing about the fact that Rodriguez is today age 71, or that his sentence will keep him in prison until approximately age 80, that was unanticipated at sentencing.  The Court similarly considered Rodriguez's age in its earlier orders denying his motions for sentence reduction.  *See* CR Dec'n at 3–5; CR Reconsideration at 2; Second CR Dec'n at 9.

Rodriguez's account of his medical conditions likewise adds nothing to his prior sentence-reduction motions.  He has not supplied any supporting medical records, let alone evidence that he is "suffering from a terminal illness or a serious medical condition," *id*. § 1B1.13(b)(1)(A)–(B), or "suffering from a medical condition that requires long-term or specialized medical care that is not being provided" in prison and "without which [he] is at risk of serious health deterioration or death," *id*. § 1B1.13(b)(1)(C).[3]  As the assembled case law rejecting similar motions reflects, the BOP is equipped to address the conditions Rodriguez lists. *See, e.g.*, *United States v. Sattar*, 467 F. Supp. 3d 152, 155–56 (S.D.N.Y. June 17, 2020)

---

[3] Although Rodriguez represents that he requested copies of his medical records from FCI Danbury, to date, no records have been supplied to the Court.

(denying compassionate release where defendant argued BOP incapable of managing high blood pressure); *United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020) (compassionate release denied following claims of heart and eye-related issues); *United States v. Teman*, No. 19 Cr. 696 (PAE), 2024 WL 1235616, at *7 (S.D.N.Y. Mar. 22, 2024) (same as to testicular issues). His motion thus falls far short of the governing standard. *See, e.g.*, *United States v. Pouryan*, No. 11 Cr. 111, 2023 WL 2456503, at *2 (S.D.N.Y. Mar. 9, 2023) (although defendant "does suffer from many of his alleged medical conditions," his medical records "establish that he has received regular treatment and care for those conditions," and thus he "has not demonstrated that the BOP cannot adequately address his medical needs" (citation omitted)); *United States v. Lawrence*, No. 19 Cr. 437, 2022 WL 4000904, at *4 (S.D.N.Y. Sept. 1, 2022) (denying sentence reduction where defendant's "treatment has been sufficient" and he "has not demonstrated that the BOP cannot adequately address his medical needs"); *United States v. Lora*, No. 16 Cr. 44, 2022 WL 1055749, at *4 (S.D.N.Y. Apr. 8, 2022) (similar); *United States v. Mood*, No. 19 Cr. 113, 2021 WL 242482, at *1 (S.D.N.Y. Jan. 25, 2021) (similar); *United States v. Zubkov*, 460 F. Supp. 3d 450, 455 (S.D.N.Y. 2020) (similar); *United States v. Brady*, No. 18 Cr. 316, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (similar).

### 2. Sentence Length

Rodriguez next challenges his sentence. He claims that it was excessive and that it was unjustified relative to those of his co-defendants.

As a matter of law, disagreements with the sentence imposed are not a basis for a grant of compassionate release. *See, e.g.*, *United States v. Beckett*, No. 20 Cr. 213-3, 2022 WL 2819075, at *3 (E.D.N.Y. July 19, 2022) (defendant's "dissatisfaction with the court's imposition of a custodial sentence does not constitute an 'extraordinary and compelling reason' for a sentence

reduction"); *United States v. Jacques*, 2022 WL 894695, at \*2 (2d Cir. Mar. 28, 2022) (summary order) (same); *United States v. Roney*, 833 F. App'x 850, 853 (2d Cir. 2020) (summary order) (same). In any event, Rodriguez's 25-year sentence, imposed for masterminding a gruesome and horrific murder committed in the course of stealing more than $1 million from a drug courier, was manifestly reasonable, for the reasons the Court set forth at length at sentencing. *See* Sent'g Tr. at 29–43; *see also* CR Dec'n at 6; CR Reconsideration at 2–3; Second CR Dec'n at 9–10. That sentence, in fact, was below both the guideline range (life imprisonment) that the Court found to apply and the Sentencing Guideline range (324–405 months imprisonment) to which the parties had stipulated. *See* Sent'g Tr. at 29. Rodriguez's sentence was also reasonable relative to those imposed on his co-conspirators in the murder—Rodriguez's closest comparators—for the reasons the Court set out in denying Rodriguez's second motion for compassionate release. *See* Second CR Dec'n at 8–9.

### 3. Asserted Rehabilitation

Rodriguez finally asserts that he has rehabilitated and that this merits a reduction in his sentence. He represents that he has participated in various prison programs, including a drug education program; that he has taken an English language program to enable him to access the BOP's programs; and that he has earned his G.E.D. CR Mot. at 6–8. He states that his "'rehabilitation efforts show that he is committed to living a law-abiding life' upon release," and "'demonstrate[] a commitment to self-improvement and personal growth.'" *Id*. at 7 (citations omitted).

The Court does not have any basis to disbelieve Rodriguez's claim to have taken the above listed courses, which is commendable. But it is common, not extraordinary, for federal inmates to participate in BOP programming; there is nothing unusual or noteworthy about

12

Rodriguez's having done so. And, as noted, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." 18 U.S.C. § 1B1.13(d). Because the other reasons adduced in support of his motion do not rise to the level of extraordinary and compelling, Rodriguez's participation in rehabilitative programs does not disturb the conclusion that a reduction in his sentence is not warranted. *See, e.g.*, *United States v. Sica*, No. 14 Cr. 462, 2025 WL 3003540, at *2 (S.D.N.Y. Oct. 24, 2025) ("In the absence of extraordinary and compelling reasons, I cannot consider rehabilitation alone as a justification for a sentence reduction."); *United States v. Suarez*, No. 11 Cr. 836, 2025 WL 2627872, at *5 (S.D.N.Y. Sept. 12, 2025) (same); *United States v. Thomas*, No. 12 Cr. 174, 2025 WL 2879280, at *7 (S.D.N.Y. Oct. 8, 2025) (similar, and collecting cases).

### B.      Section 3553(a) Factors

Even assuming the information on which Rodriguez relies together supplied a legally adequate basis for early release—and it does not come close to doing so—the Court would still deny the application. That is because the § 3553(a) factors, in combination, continue to demand the sentence imposed.

At sentencing, the Court found a 25-year sentence necessary. Principally, the Court found, as a matter of just punishment, it was "hard to imagine a more profoundly immoral act" than the murder Rodriguez orchestrated solely so that he and the other members of his robbery crew "could have more money, drug money, no less." Sent'g Tr. at 30. Rodriguez violated "[t]he single most primary and basic obligation we all have as members of a civilized society," not to kill one another. *Id*. Henry Castano's murder by asphyxiation particularly merited substantial punishment, because of its gruesome nature, because it was "a calculated, thought-out crime" that was "cold-blooded and selfish," and because it was motivated by greed. *Id*. at 31–32.

13

The Court specifically rejected Rodriguez's request for a 15-year sentence as "utterly insufficient" and "completely disproportionate to the horror" of his crimes. *Id*. at 42.  Other sentencing factors, although less weighty, also favored a substantial sentence, including general and specific deterrence and protection of the public. *Id*. at 34–36.

In denying Rodriguez's first and second compassionate release motions, the Court reiterated its conclusion that the sentence imposed was minimally necessary. *See, e.g.*, CR Dec'n at 6 ("A sentence for Rodriguez's horrific crimes along the lines of that imposed is necessary to punish Rodriguez, promote respect for the law, and deter others"); Second CR Dec'n ("[T]he Court remains convince ed that just punishment is incompatible with a prison sentence anywhere below 25 years, given the sheer evil of the plot that Rodriguez premeditated and led to brutally extinguish Castano's life to enable Rodriguez and his plotters to abscond with the $1.l3 million in drug money Castano carried.")

The Court's assessment of these factors has not changed.  Rodriguez's older age, medical conditions, and participation in BOP programs—none of which are unanticipated—do not alter the fundamental reason of the sentence: that the interest in just punishment demands it.

The Court accordingly denies Rodriguez's motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) (release permissible only if compatible with § 3553(a) factors); *see also United States v. Del Rosario*, No. 12 Cr. 81 (PAE), 2024 WL 5054912, at *6–7 (S.D.N.Y. Dec. 10, 2024) (section 3553(a) factors, considered "in combination," disfavored early release); *United States v. Butler*, No. 18 Cr. 834-10 (PAE), 2022 WL 17968627, at *3 (S.D.N.Y. Dec. 27, 2022) (similar); *United States v. Wright*, No. 15 Cr. 445-3 (PAE), 2022 WL 134870, at *5 (S.D.N.Y. Jan. 13, 2022) (similar); *United States v. Hope*, 464 F. Supp. 3d 646, 650 (S.D.N.Y. 2020) (similar).

14

**CONCLUSION**

For the reasons stated above, the Court denies Rodriguez's motion for compassionate release. The Clerk of Court is respectfully directed to terminate the motion pending at docket 189.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: December 29, 2025
New York, New York

15